LARA S. MEHRABAN
 ACTING REGIONAL DIRECTOR
SHELDON L. POLLOCK
SANDEEP SATWALEKAR
REBECCA REILLY
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
100 Pearl Street, Suite 20-100
New York, New York 10004-2616
(212) 336-0051 (Reilly)
Reillyre@sec.gov

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>       Plaintiff,<br><br>  -against-<br><br>MARK MARCHI,<br><br>       Defendant. | **COMPLAINT**<br><br>22 Civ. 2661 (  )<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Securities and Exchange Commission ("Commission"), located at 100 Pearl Street, Suite 20-100, New York, New York 10004 (New York Regional Office) for its Complaint against Defendant Mark Marchi ("Marchi" or the "Defendant"), residing at 19 Morford Place, Apartment 4I, Red Bank, New Jersey 07701, alleges as follows:

### SUMMARY

1. Between February 2016 and September 2020 (the "Relevant Period"), Marchi, through his pooled investment vehicle Precipio Capital, LLC ("Precipio"), defrauded investors by lying about Precipio's trading and investment performance and by misappropriating investor funds.

2. Marchi, a securities fraud recidivist, solicited over $2.8 million of investments in Precipio from at least 22 investors by falsely telling them he was profitably trading securities in Precipio's accounts. In fact, Marchi's trading never generated the returns he promised, and for significant portions of the Relevant Period, Marchi placed no trades at all.

3. To conceal his fraud, Marchi falsified investment documentation, including entering thousands of fake trades into an electronic portal accessed by investors. Marchi misappropriated the vast majority of investor funds by secretly using Precipio investor money to pay over $1.4 million in disbursements to earlier-in-time investors and by diverting cash from Precipio's bank accounts to his own bank accounts which he subsequently used to pay, among other things, his personal expenses, including rent, credit card bills, and monthly automobile payments to Mercedes-Benz Financial Services.

## VIOLATIONS

4. By virtue of the foregoing conduct and as alleged further herein, Defendant has violated Section 17(a) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77q(a)]; Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. §§ 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §§ 240.10b-5]; and Sections 206(1), 206(2), and 206(4) of the Investment Advisers Act of 1940 (the "Advisers Act") [15 U.S.C. § 80b-6(1), (2) and (4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

5. Unless Defendant is restrained and enjoined, he will engage in the acts, practices, transactions, and courses of business set forth in this Complaint or in acts, practices, transactions, and courses of business of similar type and object.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

6. The Commission brings this action pursuant to the authority conferred upon it by

Securities Act Section 20(b) and 20(d) [15 U.S.C. §§ 77t(b) and 77t(d)]; Exchange Act Section 21(d) [15 U.S.C. §§ 78u(d)]; and Advisers Act Sections 209(d) and 209(e) [15 U.S.C. §§ 80b-9(d), 80b-9(e)].

7. The Commission seeks a final judgment: (a) permanently enjoining Defendant from violating the federal securities laws and rules this Complaint alleges he has violated; (b) ordering Defendant to disgorge all ill-gotten gains he received as a result of the violations alleged here and to pay prejudgment interest thereon; (c) ordering Defendant to pay civil money penalties pursuant to Securities Act Section 20(d) [15 U.S.C. § 77t(d)], Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)], and Advisers Act Section 209(e) [15 U.S.C §§ 80b-9(e)]; (d) permanently prohibiting Defendant from serving as an officer or director of any company that has a class of securities registered under Exchange Act Section 12 [15 U.S.C. § 78l] or that is required to file reports under Exchange Act Section 15(d) [15 U.S.C. § 78o(d)], pursuant to Exchange Act Section 21(d)(2) [15 U.S.C. § 78u(d)(2)]; and (e) ordering any other and further relief the Court may deem just and proper.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action, and venue lies in this District, pursuant to Securities Act Sections 20(b), 20(d), and 22 [15 U.S.C. § 77t(b), 77t(d), 77t(d), 77v]; Exchange Act Sections 21 and 27 [15 U.S.C. § 78u and 78aa]; and Advisers Act Section 209(d) [15 U.S.C. §§ 80b-9(d)]. Defendant, directly and indirectly, has made use of the means or instrumentalities of interstate commerce or of the mails in connection with the transactions, acts, practices, and courses of business alleged herein. Defendant may be found in, is an inhabitant of, or transacts business in the District of New Jersey, and certain of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within this District, including the

offer and sale of securities through broker-dealers located within the District.

## DEFENDANT

9. **Marchi**, is an unregistered investment adviser and the founder of Precipio. At all relevant times, Marchi maintained de facto control over Precipio, including its bank and brokerage accounts. In September 1998, Marchi pleaded guilty to felony charges of conspiracy to violate the federal securities laws before the United States District Court for the Southern District of New York. *See United States v. Mark Marchi*, No. 98-cr-00275 (S.D.N.Y.) (LAP). Subsequently, in June 1999, Marchi was barred by New York Stock Exchange following a hearing in which Marchi was found guilty of having engaged in acts detrimental to the interest or welfare of the Exchange in violation of Exchange Rule 476(a)(7). *See* New York Stock Exchange Hearing Panel Decision No. 99-35 (April 15, 1999). In October 2015, Marchi was subject to an Administrative Consent Order ("Consent Order") with the New Jersey Bureau of Securities in connection with his operation of investment company Global Alliance Capital, LLC ("GAC"). *See In the Matter of: Global Alliance Capital, LLC and Mark Marchi (CRD # 1677447)* (October 19, 2015).

## OTHER RELEVANT ENTITY

10. **Precipio** is a Wyoming limited liability company with its principal place of business in Point Pleasant Beach, New Jersey.

## FACTS

### I. Marchi's Solicitation of Investments in Precipio

11. Marchi solicited investments in Precipio from a network of known acquaintances, including investors in his predecessor company GAC.

12. Precipio's marketing materials stated that Precipio employed a disciplined trading

methodology with a particular focus on risk management that strived to earn investors net monthly returns of 1% to 2%.

13. These materials, as well as Precipio's investor agreements, explained that Precipio investors would be charged a quarterly management fee of 25%, calculated as a percentage of net profits with reference to an investor-specific performance-based high water mark, only if new quarterly trading profits exceeded the previous quarter's net trading losses.

14. In addition, Marchi routinely orally communicated with investors and prospective investors and reiterated the aforementioned representations regarding Precipio's business model.

15. Based on Precipio's marketing materials and Marchi's communications, Precipio investors understood that their money would be pooled in Precipio and traded by Marchi.

## II.   Marchi's Trading in Precipio Brokerage Accounts

16. Precipio maintained at least four brokerage accounts across the Relevant Period.

17. Marchi had unrestricted access to, and was the sole trader in, each of the brokerage accounts.

18. Marchi used only a small portion of investor money for trading (*i.e.*, only approximately $451,000 of the over $2.8 million collected).

19. In addition, Marchi's trading was generally not profitable.  Specifically, Marchi's trading in the Relevant Period yielded a net loss of approximately $161,022, and only $275,500 was ever transferred from Precipio's brokerage accounts back to Precipio's bank accounts for potential distribution to investors.

20. With the exception of four trades executed in 2019, Marchi's trading in all Precipio brokerage accounts stopped in December 2018; however, as discussed below, Marchi never informed investors that he had ceased trading.

**III.     Marchi's Representations to Investors Regarding Precipio's Performance**

21.     Marchi falsely represented to investors in person, over the phone, by email, and via text chats, that he was actively trading in Precipio's accounts and that his trading was profitable.  Marchi invited certain investors out to dinner, told them their investments were performing well, and solicited follow-on investments.

22.     For example, throughout the Relevant Period, one investor ("Investor A") had periodic dinners with Marchi at which the two would discuss, among other things, Investor A's investments.  Based on these conversations with Marchi, Investor A understood that Precipio was performing well and agreed to make follow-on investments.  In fact, Investor A sometimes handed Marchi investment checks at the dinners.

23.     In addition, a March 9, 2020 email to multiple investors stated, "Therefore, we are being optimistic and have covered our short trade in MCHP for a four-point gain.  We have also covered our long VXX trade for another four-point gain."  On March 12, 2020, one investor ("Investor B") who had previously received the March 9, 2020 email asked Marchi whether Precipio was still long VXX.  Marchi responded, "I took it off on the big push up.  We emailed you the market update.  We made great money on VXX and MCHP.  Still short SPY with a hedge."  In fact, there had been no trades in VXX since February 2018 and, since September 2019, the total combined balance in all of Precipio's brokerage accounts was a mere $320.

24.     To hide the lack of profitable trading, to justify the continued collection of management fees, and to perpetuate follow-on investments, Marchi falsified investment documentation and caused false performance reports and Schedule K-1s to be distributed to investors.

25.     Specifically, using a master account, Marchi doctored investor-specific

information (*e.g.*, trading profit and loss ("P&L"), trading fees, etc.) visible to each investor via a third-party hosted electronic portal (the "Portal").

26. To make it appear to investors that he was trading when, in fact, he was not, Marchi manually entered thousands of fake trades into the Portal.

27. Investors accessing the Portal believed these trades to be real and profitable when, in truth, they were completely fictitious.

28. For example, as of August 25, 2020, the year-to-date account summary of Investor B indicated that Precipio had executed a total of 44 trades resulting in a net profit of $18,621 attributable to Investor B. In fact, during this time period, Marchi executed no trades and earned no profits in any of Precipio's brokerage accounts.

29. Marchi also prepared bogus market updates and performance reports and directed one investor ("Investor C"), who introduced some of his friends to the Precipio investment opportunity, to distribute these updates to Investor C's friends.

30. In addition to market commentary, the reports provided false information regarding investors' opening cash balances, income earned, and expenses. The reports also calculated management fees based off these fabricated numbers.

31. For example, on May 14, 2018, Investor C sent Investor B a performance update stating that Investor B had earned a net profit of $19,827 in Q1 2018 which, according to the email, was purportedly a net return of 10.40% (versus an S&P 500 return of -1.17% for the same time period). The email set out that Investor B owed Precipio fees in the amount of $6,609 in connection with these earnings. In fact, during this time period, Marchi placed no trades and earned no profits.

32. Finally, Marchi provided false information to Precipio's accountant such that

Schedule K-1s provided to investors matched the fake P&L numbers he had provided to investors via the Portal.

33. In reliance on Marchi's false representations regarding Precipio's trading activity and investment performance, investors agreed to pay unjustified management fees and also added capital to their existing Precipio investments.

## IV. Marchi's Misappropriation of Investor Funds

34. Throughout the Relevant Period, Marchi told investors that he would use their money to trade securities.

35. Contrary to these representations, Marchi used substantial portions of investor money to pay disbursements to investors and for non-Precipio related expenses. Specifically, Marchi utilized over $1.4 million of investor money to fund disbursements to Precipio investors and investors in GAC, Marchi's prior investment company.

36. For example, as of July 21, 2020, Precipio maintained an account balance of $93 in its primary bank account. Shortly thereafter, on July 27, 2020, the same Precipio account received investment proceeds from one investor ("Investor D") totaling $50,000. Rather than use these funds to trade, Marchi used Investor D's investment to pay disbursements to two other Precipio investors as follows: Precipio made one $45,000 investor disbursement on July 28, 2020, and one $5,000 investor disbursement on August 27, 2020.

37. In September 2020, Marchi solicited additional funds from Investor D and again used these funds to pay redemptions to other Precipio investors.

38. Specifically, on September 15, 2020, the balance in Precipio's primary account was -$16. On September 22, 2020, Precipio received an additional $75,000 investment from Investor D. Subsequently, on September 25, 2020 and October 9, 2020 respectively, Marchi

utilized Investor D's investment to pay a total of $10,000 in disbursements to two other Precipio investors.

39. Marchi also diverted large amounts of cash from Precipio's accounts for his personal use. Over the Relevant Period, cash deposits into Marchi's personal bank accounts totaled $407,389, compared with cash withdrawals from Precipio's accounts totaling $476,790.

40. In addition, Marchi spent over $18,000 of investor money at various high-end eateries.

## FIRST CLAIM FOR RELIEF
### Violations of Securities Act Section 17(a)

41. The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 40.

42. By engaging in the acts and conduct alleged above, Defendant directly or indirectly, singly or in concert, in the offer or sale of securities and by the use of the means or instruments of transportation or communication in interstate commerce or the mails, (1) knowingly or recklessly employed one or more devices, schemes or artifices to defraud, (2) knowingly, recklessly, or negligently obtained money or property by means of one or more untrue statements of a material fact or omissions of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (3) knowingly, recklessly, or negligently engaged in one or more transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

43. Defendant violated Section 17(a) of the Securities Act by, among other things, knowingly, recklessly or negligently making material misrepresentations to Precipio investors about his trading in Precipio accounts and his misappropriation of investor funds.

44. By reason of the foregoing, Defendant, directly or indirectly, singly or in concert,

violated and, unless enjoined, will again violate Securities Act Section 17(a) [15 U.S.C. § 77q(a)].

## SECOND CLAIM FOR RELIEF
### Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder

45. The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 40.

46. By engaging in the acts and conduct alleged above, Defendant, directly or indirectly, singly or in concert, in connection with the purchase or sale of securities and by the use of means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange, knowingly or recklessly (1) employed one or more devices, schemes or artifices to defraud, (2) made one or more untrue statements of a material fact or omitted to state one or more material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (3) engaged in one or more acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

47. Defendant violated Section 10(b) of the Exchange Act and Rule 10b-5 thereunder by, among other things, knowingly, recklessly or negligently making material misrepresentations to Precipio investors about his trading in Precipio's accounts and his misappropriation of investor funds.

48. By reason of the foregoing, Defendant, directly or indirectly, singly or in concert, violated and, unless enjoined, will again violate Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## THIRD CLAIM FOR RELIEF
### Violations of Sections 206(1) and 206(2) of the Advisers Act

49. The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 40.

50. By engaging in the acts and conduct alleged above, Defendant, directly or indirectly, knowingly or recklessly, by use of the mails or any means or instrumentality of interstate commerce, while acting as an investment adviser within the meaning of 202(11) of the Advisers Act [15 U.S.C. § 80b-2(11)]: (1) employed devices, schemes, or artifices to defraud a client or prospective client; and/or (2) engaged in transactions, practices, or courses of business which operate as a fraud or deceit upon a client or prospective client.

51. Defendant knew or was reckless in not knowing of the activities described herein.

52. Defendant violated Sections 206(1) and 206(2) of the Advisers Act by, among other things, knowingly, recklessly or negligently making material misrepresentations to Precipio investors about his trading in Precipio's accounts and his misappropriation of investor funds.

53. By reason of the foregoing, Defendant has violated, and unless enjoined will likely again violate, Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and (2)].

## FOURTH CLAIM FOR RELIEF
### Violations of Section 206(4) of the Advisers Act
### and Rule 206(4)-8 Promulgated Thereunder

54. The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 40.

55. Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] provides that it is unlawful for an investment adviser to engage in an act, practice, or course of business which is fraudulent, deceptive, or manipulative, and that the Commission shall issue rules to define and

prescribe measures to prevent such misconduct. Rule 206(4)-8 issued under the Advisers Act [17 C.F.R. § 275.206(4)-8] provides that it is unlawful for an investment adviser to a pooled investment vehicle: (1) to make any untrue statement of material fact or to omit to state a material fact necessary to make the statements made, in light of the circumstances under which they were made, not misleading, to any investor or prospective investor in the pooled investment vehicle; or (2) to engage in any act, practice, or course of business that is fraudulent, deceptive, or manipulative with respect to any investor or prospective investor in the pooled investment vehicle. Rule 206(4)-8 defines a "pooled investment vehicle" to include "any investment company as defined in Section 3(a) of the Investment Company Act of 1940 … or any company that would be an investment company under section 3(a) of that Act but for the exclusion provided from that definition by either section 3(c)(1) or section 3(c)(7) of that Act …." (citations omitted). Section 3(a) in turn includes any "issuer which . . . is or holds itself out as being engaged primarily, or proposes to engage primarily, in the business of investing, reinvesting, or trading in securities."

56. As an investment adviser to pooled investment vehicle Precipio, Defendant violated Sections 206(4) of the Advisers Act and Rule 206(4)-8 thereunder by, among other things, knowingly, recklessly or negligently making material misrepresentations to Precipio investors about his trading in Precipio's accounts and his misappropriation of investor funds.

57. By reason of the foregoing, Defendant has violated, and unless enjoined will likely again violate, Section 206(4) of the Advisers Act [15 U.S.C. §§ 80b-6(4)], and Rule 206(4)-8 thereunder [17 C.F.R § 275.206(4)-8].

**PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that the Court enter a Final Judgment:

**I.**

Permanently restraining and enjoining Defendant and his agents, servants, employees and attorneys and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from committing future violations of Securities Act Section 17(a) [15 U.S.C. § 77q(a)], Exchange Act Section 10(b) [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and Advisers Act Sections 206(1), 206(2), and 204(4) [15 U.S.C. §§ 80b-6(1), (2), and (4)] and Rule 206(4)-8 [17 C.F.R. § 275.206(4)-8] thereunder;

**II.**

Ordering Defendant to disgorge all ill-gotten gains received directly or indirectly, with pre-judgment interest thereon, as a result of the alleged violations;

**III.**

Ordering Defendant to pay civil monetary penalties under Securities Act Section 20(d) [15 U.S.C. § 77t(d)], Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)], and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)];

**IV.**

Permanently prohibiting Defendant from serving as an officer or director of any company that has a class of securities registered under Exchange Act Section 12 [15 U.S.C. § 78l] or that is required to file reports under Exchange Act Section 15(d) [15 U.S.C. § 78o(d)], pursuant to Securities Act Section 20(e) [15 U.S.C. § 77t(e)] and Exchange Act Section 21(d)(2) [15 U.S.C.

§ 78u(d)(2)]; and

## V.

Granting any other and further relief this Court may deem just and proper.

Dated: New York, New York
May 5, 2022

*Lara S. Mehraban*
_____
LARA S. MEHRABAN
 ACTING REGIONAL DIRECTOR
Sheldon L. Pollock
Sandeep Satwalekar
Rebecca Reilly
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
100 Pearl Street, Suite 20-100
New York, New York 10004-2616
(212) 336-0051 (Reilly)
Reillyre@sec.gov

14

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                         **Plaintiff,**<br><br>  -against-<br><br>MARK MARCHI,<br><br>                         **Defendant,** | 22 Civ. 2661 (    )<br><br>DESIGNATION OF AGENT FOR SERVICE |

      Pursuant to Local Rule 101.1(f), because the Securities and Exchange Commission (the "Commission") does not have an office in this District, the United States Attorney for the District of New Jersey is hereby designated as eligible as an alternative to the Commission to receive service of all notices or papers in the captioned action. Therefore, service upon the Chief of the Economic Crimes Unit of the United States Attorney's Office for the District of New Jersey, 970 Broad Street, Newark, New Jersey 07102, shall constitute service upon the Commission for purposes of this action.

Dated:  May 5, 2022
         New York, New York

                                           Respectfully submitted,

                                           *Lara S. Mehraban*
                                           LARA S. MEHRABAN
                                           ACTING REGIONAL DIRECTOR
                                           SECURITIES AND EXCHANGE
                                           COMMISSION
                                           New York Regional Office
                                           100 Pearl Street, Suite 20-100
                                           New York, New York 10004
                                           (212) 336-0591

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>        **Plaintiff,**<br><br>  -against-<br><br>MARK MARCHI,<br><br>        **Defendant.** | 22 Civ. 2661 (  ) |

## LOCAL CIVIL RULE 11.2 CERTIFICATION

I, Rebecca Reilly, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am Counsel in Plaintiff Securities and Exchange Commission's New York Regional Office and am the principal investigative attorney working on this matter.

2. I make this Declaration because I am the counsel on this matter with the most knowledge of the matters reflected in this Declaration.

3. Pursuant to Local Civil Rule 11.2, I certify that the matter in controversy alleged in the foregoing Complaint is not the subject of a civil complaint by private plaintiffs.

4. Pursuant to Local Civil Rule 11.2, I certify that the matter in controversy alleged in the foregoing Complaint is the subject of a criminal action pending in the United States District Court for the District of New Jersey, captioned *United States v. Mark Marchi*, 22-CR-327 (CCC). The parties to that matter are Plaintiff United States and Defendant Mark Marchi.

5. The matter in controversy in the foregoing Complaint is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding, to my knowledge.

6. I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 5, 2022
New York, New York

      /s/ Rebecca Reilly
REBECCA REILLY

2